IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–00243–EWN–BNB

ROBERTA FOLKS, and
KIM NGUYEN, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois
corporation,

      Defendant.

                                         .

---

### ORDER AND MEMORANDUM OF DECISION

---

      This is an insurance case.  Plaintiffs Roberta Folks and Kim Nguyen, allegedly on behalf of themselves and all others similarly situated, assert that Defendant State Farm Mutual Automobile Insurance Company (1) breached their respective insurance contracts by failing to pay personal injury protection ("PIP") benefits; (2) violated C. R.S. § 10–4–406(4)(a); (3) willfully and wantonly breached the insurance contracts; (4) and breached the covenant of good faith and fair dealing.  In addition, Plaintiffs seek declaratory relief and reformation of the insurance contracts.  This matter is before the court on (1) "Defendant's Motion to Stay

Litigation, or in the Alternative, to Dismiss," filed June 17, 2004; (2) "Defendant's Motion to Dismiss and to Strike or Dismiss Class Allegations," filed June 17, 2004; (3) "Defendant's Motion for Summary Judgment with Respect to All Claims Alleged by Plaintiff Kim Nguyen," filed November 26, 2004; (4) "Defendant's Motion and Brief for Summary Judgement with Respect to All Claims Alleged by Plaintiff Roberta Folks," filed November 26, 2004; (5) "Plaintiffs' Motion for Class Certification," filed November 29, 2004; (6) "Plaintiffs' Motion for Summary Judgment on the First, Second, and Third Causes of Action," filed November 29, 2004. Jurisdiction is based on 28 U.S.C. §§ 1332.

## FACTS

*1.*    *Factual Background*

   *a.*    *Overview of No-Fault Act and Brennan*

   Before addressing the issues raised by this case, I review the relevant portions of Colorado's No-Fault Act and the decision in *Brennan v. Farmers Alliance Mutual Insurance Company*, 961 P.2d 550 (Colo. App. 1998), interpreting those provisions. "The No-Fault Act requires that a complying [contract] include mandatory PIP benefits." *Brennan*, 961 P.2d at 552. Section 10–4–706(1) sets forth the basic coverages for inclusion in a complying insurance contract.[1]   Specifically, section 10–4–706(1), as relevant here, requires a carrier to provide:

---

[1]The Tenth Circuit noted in *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1238 (10th Cir. 2003), that section 10–4–706 only applies to the minimum PIP benefits and does not apply to the enhanced benefits set out in section 10–4–710. *Clark*, 319 F.3d at 1238. *Clark* was filed by counsel representing Plaintiffs in the instant case against Defendant. *Clark* is a PIP case

> (b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical . . . and nonmedical remedial care and treatment . . . performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle . . . .
>
> (c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle.

C.R.S. § 10–4–706(1)(b)(I), (1)(c)(I).  Further, section 10–4–706(4)(a) provides that:

> An insurer issuing policies providing coverages as set forth in this section shall provide written explanations of all available coverages prior to issuing any policy to an insured.  After a named insured selects a policy with desired personal injury protection coverage, an insurer shall not be under any further obligation to notify such policy holder in any renewal or replacement policy of the availability of basic personal injury protection policy or of any alternative personal injury protection coverage.

C.R.S. § 10–4–706(4)(a).  Section 10–4–707 defines the category of people who receive coverage under section 10–4–706 to include: (1) the named insured, (2) resident relatives of the named insured, (3) passengers occupying the insured's vehicle with the consent of the insured, and (4) pedestrians who are injured by the covered vehicle.  *Brennan*, 961 P.2d at 553.

The Colorado No-Fault Act also requires every insurer to offer the named insured extended PIP benefits in exchange for higher premiums.  *See* C.R.S. § 10–4–710(2)(a); *see also Clark*, 319 F.3d at 1238.  Specifically, section 10–4–710 requires that:

---

that originated in Chief Judge Babcock's court and is currently pending again before the Tenth Circuit.  The plaintiffs in *Clark* are currently seeking class certification.  As mentioned below, Plaintiffs in the instant case may or may not be members of the putative class in *Clark*.

> Every insurer shall offer the following enhanced benefits for inclusion in a
> complying policy, in addition to the basic coverages described in section
> 10–4–706, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b)
> without dollar or time limitation;
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b)
> without dollar or time limitations and payment of benefits equivalent to eighty-
> five percent of loss of gross income per week from work the injured person would
> have performed had such injured person not been injured during the period
> commencing on the day after the date of the accident without dollar or time
> limitations.

C.R.S. § 10–4–710(2)(a).  In *Brennan*, the Colorado Court of Appeals determined that the

extended PIP coverage set forth in section 10–4–710(2)(a) applied to pedestrians.  *Brennan*, 961

P.2d at 553.  The *Brennan* court concluded that "it is apparent that the extended coverages

offered there must apply to the categories of persons listed in [section] 10–4–707(1)."  *Id.*  Thus,

following *Brennan*, insurers could not use the pedestrian limitation in their insurance contracts.

The court noted that the "directive of [section] 10–4–710 is to the insurer, not the insured: all

that is required is that the insurer offer these extended benefits."  *Id.* at 554.[2]

>    **b.      *Defendant's Insurance Policies and Practices***

Defendant has retained a license to sell automobile insurance in Colorado from 1974 to the

present.  (Pls.' Mot. for Summ. J. on the First, Second, and Third Causes of Action [filed Nov.

29, 2004]; Br. in Supp. of Pls.' Mot. for Summ. J. on the First, Second, and Third Causes of

---

[2]On August 24, 1998, the Colorado Supreme Court denied a petition for certiorari filed in
the *Brennan* case.  *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550 (Colo. App. 1998),
*cert. denied*, 1998 Colo. Lexis 587 (Colo. Aug. 24, 1998).

Action, Statement of Undisputed Material Facts ¶ 1 [filed Nov. 29, 2004] [hereinafter "Pls.'

Br."]; *admitted at* Def.'s Resp. in Opp'n to Pls.' Mot. for Summ. J., Resp. to Statement of

Undisputed Material Facts ¶ 1 [filed Dec. 23, 2004] [hereinafter "Def.'s Resp."].)  Defendant

used a document called "Summary Disclosure Form" to provide its insureds with a general

explanation of the coverages available within its automobile insurance contract.  (Pls.' Br.,

Statement of Undisputed Material Facts ¶ 16; *admitted at* Def.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶ 16.)  At all times relevant to the claims in this case, Defendant used

a series of documents called "Colorado No-Fault Disclosure and Selection Form," which were

given to insureds when an insured selected PIP coverage.  (*Id.*, Statement of Undisputed Material

Facts ¶ 18; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 18.)

Defendant provides an eligible insured person a document that describes the coverage available to

that insured person.  (*Id.*, Statement of Undisputed Material Facts ¶ 22; *admitted at* Def.'s

Resp., Resp. to Statement of Undisputed Material Facts ¶ 22.)  That document indicates that if

the insured has questions, he or she should consult Defendant's contract.  (*Id.*, Statement of

Undisputed Material Facts ¶ 23; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶ 23.)  From at least 1992 until 2001, the Disclosure and Selection Form did not

contain any reference to P4 or P8 coverage.  (*Id.*, Statement of Undisputed Material Facts ¶ 19;

*admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 19.)  P4 and P8

coverage are the two PIP coverages Defendant offered as extended PIP coverage.  (*Id.*)  Other

than records which individual agents may have kept, the only signed documents contained in an

insured's file pertaining to the selection of PIP coverages were the application form and the

disclosure and selection form.  (*Id.*, Statement of Undisputed Material Facts ¶ 20; *admitted at*

Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 20.)  In 2001, Defendant

modified its disclosure and selection form to include references to the P4 and P8 coverages.  (*Id.*,

Ex. 12 [2001 memorandum].)

Defendant renews its automobile insurance contracts in Colorado on a six-month basis.

(*Id.*, Statement of Undisputed Material Facts ¶ 25; *admitted at* Def.'s Resp., Resp. to Statement

of Undisputed Material Facts ¶ 25.)  Renewal insureds are typically contacted by mail, and each

renewal envelope includes an informational document entitled "News and Notes."  (*Id.*,

Statement of Undisputed Material Facts ¶ 26; *admitted at* Def.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶ 26.)  During two specific six month renewal periods, one in early

1998 and one in 2001/2002, the renewal notices that Defendant provided to existing insureds

contained a reference to enhanced PIP, and a quotation regarding the cost of P4 an P8 coverage

within the auto renewal form.  (*Id.*, Statement of Undisputed Material Facts ¶ 27; *admitted at*

Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 27.)

      **c.**     ***Facts Regarding Plaintiff Folks***

On April 4, 1998, Plaintiff Folks, a pedestrian, was struck by a vehicle driven by Charles

McCune.  (Def.'s Mot. and Br. for Summ. J. with Respect to All Claims Alleged by Pl. Roberta

Folks, Statement of Undisputed Facts ¶ a [filed Nov. 26, 2004] [hereinafter "Def.'s Br. Re:

Folks"]; *admitted at* Pls.' Resp. to Def.'s Mot. for Summ. J. with Respect to All Claims Alleged

by Roberta Folks, Resp. to Statement of Undisputed Facts ¶ a [filed Dec. 23, 2004] [hereinafter

"Pl. Folks' Resp. to Def.'s Br. Re: Folks"].)  Charles McCune was insured by Defendant.  (Pl.

Folks' Resp. to Def.'s Br. Re: Folks, Statement of Additional Disputed Facts ¶ 14.)  Mr.

McCune's insurance contract contained the impermissible pedestrian limitation.

On April 9, 1998, Defendant mailed Plaintiff Folks a letter informing her that she would

receive only the P1 level of PIP benefits.  (Def.'s Br. Re: Folks, Statement of Undisputed Facts ¶

e; *admitted at* Pl. Folks' Resp. to Def.'s Br. Re: Folks, Resp. to Statement of Undisputed Facts ¶

e.)  No later than April 16, 1998, Plaintiff Folks was represented by counsel, Todd A. Travis[3], in

connection with the PIP claims she made with Defendant.  (Def.'s Br. Re: Folks, Statement of

Undisputed Facts ¶ e, Ex. A–3 [4/16/98 Letter].)  The letter from Mr. Travis to Defendant stated

that "[t]his firm has been retained by [Plaintiff] Folks regarding the above referenced claim.

Enclosed please find a signed authorization allowing you to provide a copy of the PIP logsheet to

me." (*Id.*, Ex. A–3 [4/16/98 Letter].)  Defendant paid Plaintiff under its P1 benefits, and on April

26, 2002, Defendant advised Plaintiff Folks that she had reached the basic medical benefit limits

of $50,000, and gave her the option of rolling over her rehabilitation benefits of $50,000 into her

medical benefits, pursuant to C.R.S. § 10–4–706.  (Pl. Folks' Resp. to Def.'s Br. Re: Folks,

---

[3]Plaintiff Folks has since retained new counsel in connection with her claims against
Defendant.

Statement of Additional Disputed Facts ¶ 18; *admitted at* Def.'s Reply in Supp. of Its Mot. for

Summ. J. with Respect to All Claims Alleged by Pl. Folks, Resp. to Statement of Additional

Disputed Facts ¶ 18 [filed Jan. 18, 2005] [hereinafter "Def.'s Reply Re: Pl. Folks"].)  Plaintiff

Folks elected to rollover her benefits.  (*Id.*)  On July 11, 2002, Defendant reached the amount of

$100,000 in combined medical and rehabilitative payments for Plaintiff Folks, and advised her

and her providers that it would no longer make payments for her PIP-related medical expenses.

(*Id.*, Statement of Additional Disputed Facts ¶ 19; *admitted at* Def.'s Reply Re: Folks, Resp. to

Statement of Additional Disputed Facts ¶ 19.)

### d.    *Facts Relating to Plaintiff Nguyen*

On July 30, 2003, Plaintiff Nguyen was involved in an automobile accident in a car driven

by Angela Fanello and owned by Plaintiff Nguyen's mother, Thu-Thi Le.  (Def.'s Mem. Br. in

Supp. of Its Mot. for Summ. J. with Respect to All Claims Alleged by Pl. Kim Nguyen,

Statement of Undisputed Material Facts ¶ A [filed Nov. 26, 2004] [hereinafter "Def.'s Br. Re:

Nguyen"]; *admitted at* Pl. Kim Nguyen's Resp. to Def.'s Mot. for Summ. J. With Respect to All

Claims Alleged by Kim Nguyen, Resp. to Statement of Undisputed Material Facts ¶ A [filed

Dec. 23, 2004] [hereinafter "Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen"].)  Defendant insured

the automobile involved in the accident under policy number 06–1778–X68.  (Def.'s Br. Re:

Nguyen, Statement of Undisputed Material Facts ¶ B; *admitted at* Pl. Nguyen's Resp. to Def.'s

Br. Re: Nguyen, Resp. to Statement of Undisputed Material Facts ¶ B.)  Ms. Le purchased the

insurance contract from Defendant on September 27, 1999. (*Id.*, Statement of Undisputed

Material Facts ¶ D; *admitted at* Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen, Resp. to

Statement of Undisputed Material Facts ¶ D.) Ms. Le's contract did not contain a pedestrian

limitation. (*Id.*, Statement of Undisputed Material Facts ¶ E; *admitted in relevant part at* Pl.

Nguyen's Resp. to Def.'s Br. Re: Nguyen, Resp. to Statement of Undisputed Material Facts ¶

E.) The contract provided the minimum P1 coverage for all classes of eligible injured persons.

(*Id.*, Ex. A–2 [Insurance Policy]; Def.'s Reply in Supp. of its Mot. for Summ. J. with Respect to

all Claims Alleged by Plaintiff Kim Nguyen, Reply Regarding Statement of Undisputed Material

Facts ¶ F [filed Jan. 18, 2005] [hereinafter "Def.'s Reply Re: Nguyen"].)

      Following the accident, Defendant paid PIP benefits to Plaintiff Nguyen. (*Id.*, Statement

of Undisputed Material Facts ¶ G; *admitted at* Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen,

Resp. to Statement of Undisputed Material Facts ¶ G.) Defendant paid Plaintiff Nguyen medical

and rehabilitative expenses as provided for in the PIP coverages contained in the contract. (*Id.*)

On February 20, 2002, Defendant sent Ms. Le a renewal notice together with an informational

flyer which described the enhanced PIP coverage limits which were available to Ms. Le. (*Id.*,

Statement of Undisputed Material Facts ¶ H; *admitted at* Pl. Nguyen's Resp. to Def.'s Br. Re:

Nguyen, Resp. to Statement of Undisputed Material Facts ¶ H.)

## 2.   *Procedural History*

      On January 9, 2004, Plaintiff Nguyen filed a complaint against Defendant in Colorado

State District Court in El Paso County, Colorado. (Compl. [filed Jan. 9, 2004].) Plaintiff

Nguyen asserted claims for (1) breach of contract, and (2) bad faith. (*Id.* ¶¶ 12–26.) On

February 9, 2004, Defendant filed its notice of removal to this court. (Notice of Removal to

United States District Ct. [filed Feb. 9, 2004].) On May 14, 2004, Plaintiff Nguyen filed an

amended class action complaint and jury demand. (Am. Class Action Compl. and Jury Demand

[filed May 14, 2004] [hereinafter "Am. Compl."].) This amended complaint added Plaintiff

Folks. (*Id.*) Plaintiffs Nguyen and Folks assert claims for (1) declaratory relief and reformation;

(2) breach of contract for failure to pay PIP benefits; (3) violation of C.R.S. § 10–4–706(4)(a);

(4) statutory willful and wanton breach of contract; and (5) breach of the covenant of the duty of

good faith and fair dealing. (*Id.* ¶¶ 56–87.) Defendant filed its answer on June 17, 2004.

(Answer to Am. Class Compl. [filed June 17, 2004].)

On June 17, 2004, Defendant filed a motion to dismiss and to strike or dismiss the class

allegations. (Def.'s Mot. to Dismiss [filed 6/17/04].) Defendant alleges that this court did not

have subject matter jurisdiction over the members of putative subclass B and Plaintiff Folks'

claims are all barred by the applicable statutes of limitations. (*Id.* at 2.) Plaintiffs filed their

response on July 23, 2004. (Pl. Resp. to Def.'s Mot. to Dismiss [filed July 23, 2004].) On June

17, 2004, Defendant also filed a motion to stay the litigation or in the alternative to dismiss.

(Mot. to Stay Litigation, Or In the Alternative to Dismiss [filed June 17, 2004] [hereinafter

"Def.'s Mot. to Stay"].) Defendant argues that "[b]ecause this case and the *Clark* case involve

the same putative classes, allege the same claims, and seek the same relief, and because the *Clark*

case was filed first and has been litigated for nearly four years, the Court should enter an order

staying litigation." (*Id.* at 2.) Plaintiffs filed their response on June 26, 2004. (Pls.' Resp. to

Def.'s Mot. to Stay Litigation, Or in the Alternative, To Dismiss [filed July 26, 2004]

[hereinafter "Pls.' Resp. to Mot. to Stay"].)

On September 16, 2004, Defendant filed a motion to consolidate this case with an action

pending in Chief Judge Babcock's court. (Mot. to Consolidate [filed Sept. 16, 2004].) On May

25, 2005, I issued an order denying the motion to consolidate as moot. (Minute Order [filed

5/25/05].)

On November 26, 2004, Defendant filed a motion for summary judgment with respect to

all claims filed by Plaintiff Folks. (Def.'s Br. Re: Folks.) Defendant argues that all of Plaintiff

Folks' claims are barred by the applicable statutes of limitations. (*Id.* at 6.) Plaintiff Folks

responded to Defendant's motion for summary judgment on December 23, 2004. (Pl. Folks'

Resp. to Def.'s Br. Re: Folks.) Defendant filed its reply on January 18, 2005. (Def.'s Reply Re:

Folks.)

Similarly, Defendant filed a motion for summary judgment with respect to all claims filed

by Plaintiff Nguyen on November 26, 2004. (Def.'s Br. Re: Nguyen.) Defendant argues that

Plaintiff Nguyen's claim for reformation is not valid because her insurance contract is not

defective. (*Id.* at 8.) Defendant alleges that Plaintiff Nguyen's claims for breach of contract,

willful and wanton breach of contract, and breach of good faith and fair dealing all fail in the

absence of a valid claim for reformation.  (*Id.*)  Further, Defendant argues that Plaintiff Nguyen's

claim for violation of C.R.S. § 10–4–706 fails because Defendant was not required to provide a

written explanation of enhanced PIP benefits.  (*Id.* at 12.)  Plaintiff Nguyen filed her response on

December 23, 2004.  (Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen.)  Defendant filed its reply

on January 18, 2005.  (Def.'s Reply Re: Nguyen.)

On November 29, 2004, Plaintiffs filed a motion for class certification.  (Pls.' Mot. for

Class Certification [filed Nov. 29, 2004].)  Defendant filed its response in opposition to the

motion for class certification on December 23, 2004.  (Def.'s Resp. in Opp'n to Pls.' Mot. for

Class Certification [filed Dec. 23, 2004].)

On November 29, 2004, Plaintiffs filed a motion for summary judgment with respect to

the first, second, and third claims.  (Pls.' Br.)  Plaintiffs argue that the insurance contracts

Defendant issued to Plaintiffs did not comply with section 10–4–710 and the contracts should be

reformed to conform to the applicable statutes.  (*Id.* at 11–18.)  Additionally, Plaintiffs argue

that Defendant violated section 10–4–706 and Plaintiffs are entitled to judgment as a matter of

law.  (*Id.* at 18.)  Defendant filed its response on December 23, 2004.  (Def.'s Resp.)  Plaintiffs

filed their reply on January 18, 2005.  (Pls.' Reply.)  The pending motions are now fully briefed.

## ANALYSIS

### 1.    *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990].)

**2.**     ***Evaluation of Claims***

### a.      *Plaintiff Folks' Claims*

Plaintiff Folks asserts five claims against Defendant.  (Am. Compl.)  Plaintiff Folks

asserts claims for (1) declaratory relief and reformation of the insurance contract; (2) breach of

contract for failure to pay PIP benefits; (3) violation of C.R.S. § 10–4–706(4)(a); (4) willful and

wanton breach of contract; and (5) breach of the covenant of good faith and fair dealing.  (*Id.* ¶¶

56–87.)  Defendant moves for summary judgment on the basis that the statute of limitations has

run on each of Plaintiff Folks' claims.  I will first evaluate the claim for reformation, and then I

will discuss the remainder of the claims.

### (1)      *Reformation*

Reformation of an instrument is an equitable remedy.  *Board of Comm'rs of Pitkin County*

*v. Timroth*, 87 P.3d 102, 105 (Colo. 2004).  The time frame within which an action for

reformation must be commenced, absent a specific statute of limitation, is governed by the

equitable doctrine of laches.  *In re Estate of Scott*, 735 P.2d 924, 926 (Colo. App. 1987).  "In

general, laches cannot be imputed to one who has the right to the relief, until he discovers the

fraud or mistake upon which his claim is based, and has a reasonable time thereafter within which

to seek relief."  *Id.*

On January 8, 1998, the Colorado Court of Appeals announced the decision in *Brennan*,

which was a significant change in Colorado law.  *Brennan* mandated that (1) extended PIP

benefits purchased under the No-Fault Act are available for injuries to pedestrians, and (2) where

the insurer was required to offer extended PIP benefits for pedestrians as well as members of insured's family, but failed to do so, extended protection for pedestrians would be read into the contract. *Brennan*, 961 P.2d at 553–54. Thus, on April 4, 1998, the date of Plaintiff Folks' accident, Colorado law required that Defendant offer enhanced PIP benefits for inclusion in insurance contracts. On April 9, 1998, Defendant mailed Plaintiff Folks a letter informing her that she would receive only the P1 level of PIP benefits. (Def.'s Br. Re: Folks, Statement of Undisputed Facts ¶ e; *admitted at* Pl. Folks' Resp. to Def.'s Br. Re: Folks, Resp. to Statement of Undisputed Facts ¶ e.) The facts taken in a light most favorable to Plaintiff Folks demonstrate that Defendant did not inform her of the enhanced PIP benefits. Plaintiff Folks first became aware of this option and her potential claim for reformation against Defendant on April 16, 1998 when she retained counsel in connection with the PIP claims she made with Defendant. (Def.'s Br. Re: Folks, Statement of Undisputed Facts ¶ e, Ex. A–3 [4/16/98 Letter].) Thus, Plaintiff, through her attorney, was aware of the violation of Colorado law and her ensuing claim for reformation at the latest on April 16, 1998. *See U.S. v. Windrix*, 405 F.3d 1146, 1157 (10th Cir. 2005) (holding attorney was charged with knowledge of local rules and law); *see also In re Home & Family, Inc.*, 85 F.3d 478, 480 (10th Cir. 1996) (holding counsel is charged with knowledge of rules of procedure). Plaintiff Folks did not file her suit until May 14, 2004, well beyond the point that she discovered she had a valid claim. (Am. Compl.)

Indeed, Plaintiff Folks' new counsel was intimately aware of the change in Colorado law giving rise to Plaintiff Folks' cause of action. This is apparent because on August 24, 2000,

Plaintiff Folks' counsel filed the *Clark* action on behalf of other clients against Defendant under similar facts and law as the instant case.  (Def.'s Mot. to Stay at 11, Ex. A [Class Action Complaint and Jury Demand in *Clark*].)  The facts viewed in a light most favorable to Plaintiff Folks show that both her present and former counsel knew of the facts and circumstances forming the basis of her claim.  Due to Plaintiff Folks' knowledge of her cause of action and failure to bring her claims for over four years, equitable considerations do not permit Plaintiff Folks to file this tardy lawsuit.  *See Finegan v. Lumbermens Mut. Cas.*, 329 F.2d 231, 233 (D.C. Cir. 1963) (holding that action for reformation of personal liability policy was barred by laches where suit was not filed until four years after insured learned from insurer that it denied coverage of injuries sustained by employee on insured's farm).  Accordingly, Plaintiff Folks' claim is barred by the doctrine of laches.  Thus, Defendant is entitled to summary judgment on Plaintiff Folks' first claim for relief — reformation.

Plaintiff Folks agrees that "when the remedy sought is equitable, [the] statute[] of limitations do[es] not apply, only equitable defenses such as laches." (Pl. Folks' Resp. to Def.'s Br. Re: Folks at 13.)  Plaintiff Folks contends, however, that her claim for reformation should not be barred by the doctrine of laches because (1) Defendant cannot show unconscionable delay by Plaintiff Folks in filing her complaint and (2) there is no injustice to Defendant.  (*Id.* at 14.)  First, as previously discussed, over four years passed between the time Plaintiff Folks retained counsel and Plaintiff Folks filed a complaint in this court.  (Def.'s Br. Re: Folks, Statement of Undisputed Facts ¶ e, Ex. A–3 [4/16/98 Letter]; Am. Compl.)  The conclusion that this delay

was unreasonable is buttressed by Plaintiff Folks' contention that she was a member of the

putative class of plaintiffs in *Clark*.[4]  (Pl. Folks' Resp. to Def.'s Br. Re: Folks at 14–16.)

Plaintiff Folks' counsel filed the *Clark* lawsuit, under strikingly similar facts, against Defendant

in this case in August 2000.  It is unreasonable for Plaintiff Folks to have sat on her claim for so

long.  Additionally, Plaintiff Folks is incorrect in her assertion that Defendant will not suffer

injustice as a result of this delay.  If, as Plaintiff Folks admits, she is a member of the putative

class in *Clark*, then Defendant should not have to defend a separate lawsuit in this court over

four years after Plaintiff Folks first learned of her claims against Defendant, while simultaneously

defending itself in the *Clark* suit.

Finally, Plaintiff Folks contends that "the filing of the class complaint, such as that filed

in *Clark*, is appropriately considered in evaluating a laches defense."  (*Id.*)  This argument is

incredibly disingenuous in light of the fact that Plaintiff Folks has stated that she is not a member

of the class of plaintiffs in *Clark*.  (Pls.' Resp. to Mot. to Stay at 2–5, n. 1.)  For the foregoing

reasons, Plaintiff Folks' claim for reformation is untimely.

### *(2)   Remainder of Plaintiff Folks' Claims*

A cause of action accrues when the "litigation could first have been successfully

_____

[4]Plaintiff Folks seeks to have it both ways.  On the one hand, she argues in her response
to Defendant's motion for summary judgment that she is a member of the putative class of
plaintiffs in *Clark*.  (Pl. Folks' Resp. to Def.'s Br. Re: Folks at 14–16.)  In her response to
Defendant's motion to stay litigation, however, Plaintiff Folks argues that she is not a member of
the putative class in *Clark*.  (Resp. to Mot. to Stay at 2–5, n. 1.)

maintained." *Daugherty v. Allstate Ins. Co.*, 55 P.3d 224, 226 (Colo. App. 2002). Plaintiff Folks' claims for breach of contract and willful and wanton breach of contract are governed by a three year statute of limitations. C.R.S. § 13–80–101(1)(a). A cause of action for breach of contract accrues on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence. *Id.* Plaintiff Folks' claim for violation of C.R.S. § 10–4–706(4)(a) is also governed by a three year statute of limitations. C.R.S. § 13–80–101(1)(j). Plaintiff Folks' claim for bad faith breach of insurance contract is governed by a two year statute of limitations. *See Daugherty*, 55 P.3d at 228.

As stated above, Plaintiff could first have successfully maintained an action against Defendant for the aforementioned claims on April 16, 1998, when she retained counsel and formally learned of her potential claims against Defendant. (Def.'s Br. Re: Folks, Statement of Undisputed Facts ¶ e, Ex. A–3 [4/16/98 Letter].) Plaintiff Folks did not bring any claims against Defendant until May 14, 2004, when she was added as a named plaintiff in this action. (Am. Compl.) This is well beyond the three year statute of limitations for breach of contract, willful and wanton breach of contract, and violation of C.R.S. § 10–4–706(4)(a). Similarly, Plaintiff Folks filed her claim for bad faith breach of insurance contract well beyond the two year statute of limitations applicable for that cause of action. Accordingly, Defendant is entitled to summary judgment Plaintiff Folks' remaining claims.

Plaintiff Folks proffers a number of arguments that counsel against this result. First,

Plaintiff Folks argues that her claims will not accrue until this Court determines the effective date of reformation of the insurance contracts, or, alternatively that the claims accrued on December 21, 2003, the effective date of reformation in *Clark v. State Farm Mutual Auto. Ins. Co.*, 292 F. Supp. 2d 1252 (D. Colo. 2003).  (Pl. Folks' Resp. to Def.'s Br. Re: Folks at 8–10.)  Plaintiff Folks argues that under *Clark*, "there can be no accrual until this Court reforms the date" of the contract.  (Pl. Folks' Resp. to Def.'s Br. Re: Folks at 8.)  Plaintiff Folks' argument is incorrect.

    As discussed above, Plaintiff Folks' claim for reformation is barred by the doctrine of laches, and therefore I will not reform the insurance contract.  Further, it is perplexing that Plaintiff Folks seeks reformation of her insurance contract on the basis of *Clark*.  *Clark* involved a plaintiff whose accident occurred prior to the *Brennan* decision.  At the time of the *Clark* plaintiff's accident, it was unclear whether (1) extended PIP benefits purchased under the No-Fault Act were available for injuries to pedestrians, and (2) the insurer was required to offer extended PIP benefits to pedestrians.  At the time of Plaintiff Folks' accident, the law was clear that extended PIP benefits applied to pedestrians and that Defendant was required to offer extended PIP benefits.  Further, in Plaintiff Folks' response to Defendant's motion to stay, Plaintiff Folks' vociferously argues that the putative class that she is seeking to certify includes only those plaintiffs whose accidents occurred after the *Brennan* decision.  (Pls.' Resp. to Mot. to Stay at 2–5.)  By Plaintiff Folks' admission, her claims differ from the plaintiffs' claims in *Clark*.  Accordingly, Plaintiff Folks' argument that her contract should be reformed to reflect the date of reformation in *Clark* is contrary to her own position in the present litigation.

Second, Plaintiff Folks argues that "[t]he first time [Defendant] failed to pay at the enhanced PIP level is the first possible date Folks' claim could accrue and, therefore, under C.R.S. § 13–80–108 her claim was timely filed." (Pl. Folks' Resp. to Def.'s Br. Re: Folks at 10.) Plaintiff Folks argues that "[t]he statute of limitations in effect . . . begin[s] to run [when] plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the existence of facts forming the basis of claim for relief." (*Id.*) Plaintiff Folks contends that "she would not have been in fact damaged until she ran out of basic PIP benefits in 2002." (*Id.*) Plaintiff Folks argues that "[u]ntil [Defendant] refused to pay APIP, [Plaintiff] Folks did not have a breach of contract." (*Id.* at 11.)

Plaintiff Folks misstates the inquiry. Plaintiff Folks' claims are premised on the fact that Defendant failed to offer and pay extended PIP benefits. Plaintiff Folks first learned that Defendant would only pay the minimum level of benefits on April 9, 1998. (Def.'s Br. Re: Folks, Statement of Undisputed Facts ¶ e, Ex. A–3 [4/16/98 Letter]; *admitted at* Pl. Folks' Resp. to Def.'s Br. Re: Folks, Resp. to Statement of Undisputed Facts ¶ e.) This is when the breach occurred. Plaintiff Folks retained counsel in connection with this matter at the latest on April 16, 1998. (*Id.*) Therefore, Plaintiff Folks discovered the existence of facts forming the basis of her claims for relief at the latest on April 16, 1998. Plaintiff Folks' argument as to this point is therefore unavailing.

Next, Plaintiff Folks argues that she "had no means of knowing what PIP benefits were

even available to her under any [Defendant's] policy until well within the 3 years preceding the

filing of this lawsuit, whereas [Defendant] actively concealed facts from her it was obligated to

reveal under C.R.S. § 10–4–706(4)(b)." (Pl. Folks' Resp. to Def.'s Br. Re: Folks at 15.)  This

statement is contrary to the facts of this case.  As repeatedly noted above, Plaintiff Folks

retained counsel by April 16, 1998.  (Def.'s Br. Re: Folks, Statement of Undisputed Facts ¶ e,

Ex. A–3 [4/16/98 Letter].) Therefore, Plaintiff Folks, through counsel, was charged with the

knowledge regarding the status of the law and her claims.  By April 16, 1998, at the latest,

Plaintiff Folks knew that Defendant would only provide her the minimum PIP benefits in

contravention of the statue and the mandate of *Brennan*.

Finally, Plaintiff Folks contends that "any statute of limitations would be tolled by the

pendency of the *Clark* case." (*Id.*)  Plaintiff Folks contends that "the filing of a class complaint

will toll the statute of limitations for the benefits of the class." (*Id.*)  Plaintiff Folks' argument is

absurd.  As stated above, Plaintiff Folks argued in other submissions to this court that she is not

a member of the putative class in *Clark*.  (Pls.' Resp. to Mot. to Stay at 2–5.)  In fact, Plaintiff

Folks contends that "[a]fter *Clark I* was remanded by the Tenth Circuit, Plaintiff Clark moved to

amend his class definition specifically to restrict the class definition to the time period 'before

January 8, 1998.'" (*Id.* at 3 [citing Clark Am. Compl. ¶ 9 (Ex. 3)].)  Plaintiff Folks' claims arose

after her accident on April 4, 1998.  (Pl. Folks' Resp. to Def.'s Br. Re: Folks, Statement of

Additional Disputed Facts ¶14.)  Thus, by Plaintiff Folks' own admission, she does not consider

herself a member of the putative class in *Clark* and therefore the statutes of limitations applicable

to her claims cannot be tolled by the pendency of the *Clark* case. For the reasons set forth above, I grant Defendant's motion for summary judgment with respect to all claims asserted by Plaintiff Folks.

###     b.     *Plaintiff Nguyen's Claims*

Plaintiff Nguyen asserts five claims against Defendant. Plaintiff Nguyen asserts claims for (1) declaratory relief and reformation of the insurance contract; (2) breach of contract for failure to pay PIP benefits; (3) violation of C.R.S. § 10–4–706(4)(a); (4) willful and wanton breach of contract; and (5) breach of the covenant of good faith and fair dealing. (*Id.* ¶¶ 56–87.) Defendant asserts that it is entitled to summary judgment on all of Plaintiff Nguyen's claims. (Def.'s Br. Re: Nguyen at 7.) First I will evaluate Plaintiff Nguyen's third claim for relief, violation of C.R.S. § 10–4–706(4)(a), and then I will discuss Plaintiff Nguyen's remaining claims.

###     (1)     *Violation of C.R.S. § 10–4–706(4)(a)*

Plaintiff Nguyen's third claim for relief alleges a violation of C.R.S. § 10–4–706(4)(a). (Am. Compl. ¶¶ 67–75.) Plaintiff Nguyen does not dispute that Defendant offered her extended PIP coverage. Instead, Plaintiff Nguyen argues that "the form presented to her by [Defendant] . . . lacked any reference whatsoever to [Defendant's] extended PIP benefits," (Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen at 13–14), and therefore the offer was not meaningful. Plaintiff Nguyen contends that "[Defendant] was obligated under C.R.S. § 10–4–706(4)(a) to explain *in writing* to its prospective insureds the availability of additional PIP benefits, including medical

benefits unlimited in time or amount, and wage loss benefits unlimited in time or amount, as

defined in C.R.S. § 10–4–710." (*Id.* ¶ 69 [emphasis added].)  Plaintiff Nguyen argues that the

provision in section 10–4–706(4)(a) requiring written explanation of minimum PIP benefits is

equally applicable to the enhanced PIP benefits in section 10–4–710.  (Pl. Nguyen's Resp. to

Def.'s Br. Re: Nguyen at 11.)  Plaintiff Nguyen contends that "[u]nder Colorado law, if an

insurer did not adequately explain in writing the available coverages, including enhanced PIP, then

no complying offer would have been made." (*Id.*)  Plaintiff Nguyen's argument specious at best.

From the outset I note that Plaintiff Nguyen agrees that "the offer of extended PIP

benefits [under section 10–4–710] need not be in writing." (*Id.*)  Yet, in the same breath, Plaintiff

Nguyen argues that "if the insurer did not adequately explain in writing the available coverages,

including enhanced PIP, then no complying offer would have been made." (*Id.*)  Indeed, Plaintiff

acknowledges that "the statute does not expressly address whether an offer [of enhanced

benefits] must be in writing." (*Id.* at 13.)   Despite this acknowledgment, Plaintiff Nguyen

contends that the written explanation requirement for minimum PIP coverages set forth in section

10–4–706 is equally as applicable to the enhanced coverages set forth in section 10–4–710.  (*Id.*)

Section 10–4–706 requires a written explanation of the minimum PIP coverages.

Specifically, section 10–4–706(4)(a) provides:

> An insurer issuing policies providing *coverages as set forth in this section* shall
> provide written explanations of all available coverages prior to issuing any policy
> to an insured.  After a named insured selects a policy with desired personal injury
> protection coverage, an insurer shall not be under any further obligation to notify

such policy holder in any renewal or replacement policy of the availability of basic personal injury protection policy or of any alternative personal injury protection coverage.

C.R.S. § 10–4–706(4)(a) (emphasis added).  The only benefits detailed and "set forth in this section" are the minimum PIP coverages.  *See id.*  The Tenth Circuit, in evaluating *Brennan* and the Colorado No-Fault act, noted that section 10–4–706 only applies to the minimum PIP benefits and does not apply to the enhanced benefits set out in section 10–4–710.  *Clark*, 319 F.3d at 1238.  Accordingly, the phrase "coverages as set forth in this section," C.R.S. § 10–4–706(4)(a), which requires written explanations, only refers to the minimum coverages and not the enhanced coverages as provided in section 10–4–710.  In fact, section 10–4–710, on its face, does not require written explanations.  Section 10–4–710 only requires "that the insured shall offer" enhanced benefits.  C.R.S. § 10–4–710(2)(a).  Therefore, Defendant did not have an obligation to provide a written explanation of enhanced PIP benefits under section 10–4–706.  Accordingly, Plaintiff's third claim for relief fails as a matter of law.

Plaintiff argues that the term "'offer' is broad and is composed of not only the offer but the [written] explanation." (*Id.* at 12.)  In support, Plaintiff Nguyen cites *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992), for the proposition that "a meaningful offer cannot occur without an adequate written explanation." (Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen at 12.)[5] *Parfrey* does not stand for that proposition.  The Colorado Supreme Court, in *Parfrey*, held that

---

[5]Plaintiff Nguyen refers to the case as "*Parfrey v. Allstate Ins. Co.*"  The case, as cited by Plaintiff Nguyen is properly styled as "*Allstate Ins. Co. v. Parfrey*."

"an insurer has a one-time duty to inform an insured in a reasonable manner calculated to permit the insured to make an informed decision on whether to purchase . . . coverage offered by the insurer at a level higher than the minimum statutory liability limits." *Parfrey*, 830 P.2d at 913. The court did not determine at any point in its opinion that the notification had to be in writing. Rather, the court set forth numerous factors to consider when evaluating whether an insurer has fulfilled its statutory duty to make a meaningful offer. *Id.* One of these factors was whether the offer was oral or in writing. *Id.* If this was one of several factors that a court should consider, whether the offer was in writing cannot be, *a fortarari*, the single determinative factor. Thus, Plaintiff Nguyen's argument as to this point fails.

Second, Plaintiff Nguyen contends that the legislative history "confirms that in the APIP context a written explanation was expected." (*Id.* at 15.) Plaintiff Nguyen's argument to this point is speculative. In support, Plaintiff Nguyen offers the statements of one Representative indicating that enhanced PIP options must be "printed out and offered." (*Id.*) The legislative history does not change the plain meaning of the statute. "Only when the statute is unclear or ambiguous may the court look beyond the words of the statute to legislative history or rules of statutory construction." *People v. Goodale*, 78 P.3d 1103, 1107 (Colo. 2003). Here, Plaintiff agrees that the statute does not require a written offer of enhanced PIP benefits. (Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen at 11.) Accordingly, it is not necessary to look to the legislative history because the statute is clear on its face.

Finally, Plaintiff argues that the Department of Insurance, in its market conduct examinations, takes the position that section 10–4–706(4)(a) requires a written explanation of the coverages in section 10–4–710. (*Id.* at 16.)  The market conduct examination provided by Plaintiff Nguyen does not indicate that Defendant must provide a written explanation of benefits under section 10–4–710.  (*Id.*, Ex. 21 [Market Conduct Examination Report].)  Even assuming this report was valid authority and did in fact mention a requirement regarding written explanation of benefits, Plaintiff Nguyen still cannot overcome the plain language of the statute. Plaintiff has not demonstrated that Defendant violated section 10–4–706(4)(a).  Accordingly, Defendant is entitled to summary judgment on Plaintiff's third claim for relief.

### (2) *Reformation*

Defendant contends that Plaintiff Nguyen does not have a valid claim for reformation of her insurance contract because she has not alleged a defect in the contract.  (*Id.* at 8.)  From the outset, I note that Plaintiff Nguyen's contract did not contain the prohibited pedestrian limitation that Plaintiff Folks' contract contained.  (Def.'s Br. Re: Nguyen, Ex. A–2 [Nguyen' Policy # 9806.5].)  Therefore, Plaintiff Nguyen cannot maintain a cause of action for reformation based on the inclusion of the pedestrian limitation.  Instead, Plaintiff Nguyen alleges two other defects in the insurance contract.  Accordingly, I will evaluate Plaintiff Nguyen's alleged defects in the insurance contract in order to determine whether Plaintiff Nguyen has a valid claim for reformation.

### (A)    *Defect in the Aggregate Limit*

First, Plaintiff Nguyen alleges that she is entitled to reformation of the contract because

Defendant impermissibly limited all offers of enhanced PIP to the aggregate limit of $200,000

through the use of a single limit policy amount.  (*Id.* at 9.)  Plaintiff Nguyen asserts that while

"C.R.S. § 10–4–719(2)(b) permits the inclusion in the contract of a provision limiting the

aggregate benefits outlined in C.R.S. § 10–4–706(1), it does so on a per person/per accident basis,

not on a single-limit policy basis, as [Defendant] has done." (*Id.*)  C.R.S. § 10–4–710(b) provides

that:

> A complying policy may provide that all benefits set forth in section
> 10–4–706(1)(b) to (1)(e) and in this section are subject to an aggregate limit of two
> hundred thousand dollars payable on account of injury to or death of *any one*
> *person as a result of any one accident* arising out of the use or operation fo a
> motor vehicle.

C.R.S. § 10–4–710(b) (2002) (emphasis added).  The contract at issue, with respect to aggregate

limits states that "[w]e will pay in accordance with the **No-Fault Act** for **bodily injury** to an

**insured**, caused by an accident resulting form the use or operation of a ***motor vehicle***: 1.  Medical

Expenses . . . 2. Rehabilitation Expenses . . . 3.  Loss of Gross Income . . . 4.  Essential Services

Expenses . . . 5.  Death Compensation." (Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen, Ex. 19

[Nguyen' Policy # 9806.5]) (emphasis in original.)  The plain language of the contract indicates

that the coverages explained apply to each insured on a per accident basis.  Indeed, the "Limits of

Liability" section indicates that "[t]he most we pay for **each insured** who sustains bodily injury

and the period of time from the date of **the accident** in which the services must be furnished . . .

shall not exceed the amount and period of time shown in the Schedule applicable to each benefits

under your coverage symbol." (*Id.* [emphasis added].) This language also indicates that the

coverage applies to each insured involved in each accident. Thus, the plain language of the

contract indicates that the aggregate limits are in accordance with the statute as they apply to

"any one person as a result of any one accident." *See* C.R.S. § 10–4–710(b) (2002).

   Moreover, it is undisputed that Defendant applies the contract language correctly. In

fact, the accident involving Plaintiff Nguyen is an example of Defendant's compliance with the

contract and statutory language. The Nguyen accident involved three different injured parties and

PIP benefits were paid on behalf of each of the three insureds. (Def.'s Reply in Supp. of its

Mot. for Summ. J. with Respect to All Claims Alleged by Pl. Kim Nguyen, Ex. C ¶ 3 [Decl. of L.

Tamaye] [filed Jan. 18, 2005] [hereinafter "Def.'s Reply Re: Nguyen].) Plaintiff Nguyen

received the full amount of P1 benefits and Defendant paid total benefits in excess of $200,000

relating to the accident at issue. (Def.'s Reply Re: Nguyen, Ex. C ¶ 2 [Decl. of L. Tamaye].)

The facts of the instant case are evidence that Defendant does not apply the aggregate limit on a

"single-limit policy basis" and instead applies the aggregate limit on a single insured/single

accident basis. Plaintiff Nguyen's argument to the contrary is disingenuous and refuted by the

facts of her own case.

   Moreover, Plaintiff Nguyen does not refute or attempt to argue that the facts of her case

are evidence that Defendant is misapplying the aggregate amounts in contravention of the statute.

Instead, Plaintiff argues that Defendant's contract language impermissibly employs a "single limit

policy provision, rather than a $200,000 per person/per accident limit permitted by statute."

(Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen at 10.)  As discussed above, the contract does not

employ such a limit and Defendant is in compliance with the statute.  Accordingly, Defendant's

contract is not defective as to the aggregate limit provision and Plaintiff Nguyen is not entitled to

reformation of the contract as to this point.

### (B)      Offer of Enhanced PIP Benefits

Plaintiff Nguyen argues that her insurance contract is defective because Defendant never

made a written offer "to Nguyen's mother of the enhanced PIP benefits as defined by [section]

10–4–710, and consequently the contract must be reformed to include the highest coverages

required to be offered under C.R.S. § 10–4–710."  (Pl. Nguyen's Resp. to Def.'s Br. Re: Nguyen

at 11.)  As described above, (Analysis § 2(b)(1) *supra*), the statute does not require that

Defendant provide the insured with a written offer of enhanced PIP benefits.  Thus, Plaintiff

Nguyen is not entitled to reformation of the insurance contract as to this point.  Plaintiff Nguyen

has not demonstrated a defect in her insurance contract.  Accordingly, Defendant is entitled to

summary judgment on Plaintiff Nguyen's first claim for relief — reformation.

### (3)      Plaintiff Nguyen's Remaining Claims

Plaintiff Nguyen's second, fourth, and fifth claims for relief are all premised on

Defendants' alleged failure to pay and offer her additional PIP benefits in excess of the level of benefits purchased by Ms. Le.  (Am. Compl. ¶¶ 63–66, 76–87.)  In absence of a valid claim for reformation, incorporating a higher level of benefits into her contract, Plaintiff Nguyen does not have a valid claim for breach of contract, willful and wanton breach of contract, or bad faith breach of insurance contract.  Defendant paid Plaintiff Nguyen the contract limit under the insurance contract in accordance with the premiums Ms. Le paid to Defendant.  Despite Plaintiff Nguyen's allegation to the contrary (Am. Compl. ¶¶ 76–83), the insurance contract, on its face, did not violate the mandate of *Brennan*.  The contract did not contain the impermissible "pedestrian limitation."  (Def.'s Br. Re: Nguyen, Ex. A–2 [Nguyen's Policy #9806.5].)  *Brennan* did not require that Defendant provide a written offer of enhanced PIP benefits to Plaintiff Nguyen.  Defendant was only required to make a meaningful offer.  Accordingly, Defendant is entitled to summary judgment on Plaintiff Nguyen's second, fourth, and fifth claims for relief.

*3.*     *Conclusions*

Based on the foregoing it is therefore ORDERED that:

1.     Defendant's motion to dismiss and to strike or dismiss class allegations (# 25) is DENIED as moot.

2.     Defendant's motion to stay or in the alternative to dismiss (# 28) is DENIED as moot.

3.     Defendant's motion for summary judgment with respect to all claims asserted by

Plaintiff Folks (# 68) is GRANTED.

4.     Defendant's motion for summary judgment with respect to all claim asserted by

Plaintiff Nguyen (# 69) is GRANTED.

5.     Plaintiffs' motion for class certification (# 75) is DENIED as moot.

6.     Plaintiffs' motion for summary judgment with respect to the first, second, and third

causes of action (# 86) is DENIED.

7.     The clerk shall forthwith enter judgment in favor of Defendant and against

Plaintiffs, dismissing all claims with prejudice.  Defendants may have their costs by filing a bill of

costs within eleven days of the date of this order.

Dated this   30   day of June, 2005.

BY THE COURT:

 s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge