**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 04-cv-00243-MSK-BNB

**ROBERTA FOLKS, on behalf of herself and all others similarly situated,**

      **Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation,**

      **Defendant.**

_____

**ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE**

_____

      **THIS MATTER** comes before the Court on the Recommendation of United States Magistrate Judge (**#180**), which recommends that Plaintiff Roberta Folks's Motion for Class Certification (**#169**)[1] be denied on statute of limitation grounds.  Ms. Folks filed a timely objection (**#183**) to the Recommendation.  Having considered the same, the Court **FINDS** and **CONCLUDES** as follows.

## I.  Jurisdiction

      The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a).

## II.  Background

      This case concerns efforts by Ms. Folks, a Colorado citizen, to recover Personal Injury Protection ("PIP") benefits from State Farm for injuries sustained as a result of an automobile

---

[1]Defendant State Farm Mutual Automobile Insurance Company ("State Farm") responded (**#174**) to Ms. Folks' motion, and Ms. Folks thereafter replied (**#178**)

accident.  Ms. Folks was injured in April 1998; she became a Plaintiff in this action in 2004

asserting both individual and putative class action claims.  Following entry of summary

judgment against her and reinstatement of the case after an appeal, as well as various twists and

turns in a related class action case captioned *Clark v. State Farm Mutual Automobile Insurance*

*Company,* Civil Action No. 00-cv-01841-LTB, discussed in further detail below, she moved for

class certification.  State Farm opposes class certification, arguing that this case does not satisfy

the requirements of Fed. R. Civ. P. 23.  In addition, it contends that Ms. Folks' class action

claims are time-barred.

The Recommendation addresses only the second issue, the timeliness of the putative class

claims, and concludes that the claims are barred by the statute of limitation.  As discussed further

below, Ms. Clark's lawsuit was filed after the statute of limitation had expired given the date of

accrual of her individual cause of action.  Nonetheless, her complaint was deemed timely

because she was given the benefit of tolling during the pendency of the *Clark* class action.  The

issue presented now is whether the claims asserted on behalf of other class members were also

tolled.  The Recommendation concluded they were not, applying law that has not been adopted

in the Tenth Circuit.  Ms. Folks objected, arguing that the facts in her case are distinguishable or,

alternatively, that an exception applies.  The Court, however, concludes that before examining

the question of timeliness, the viability of the class claims must first be resolved.  Because the

Recommendation did not address the merits of the certification question, this issue is analyzed

*de novo.*[2]

---

[2]When a magistrate judge issues a recommendation on a dispositive motion, the parties
may file specific, written objections within fourteen days after being served with a copy of the
recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The district court shall make

Therefore, in order to resolve the issues presented in the Motion for Class Certification, the Court begins with a thorough review of the background of *Clark*, Ms. Folks' case, and the principles of class action tolling.

### III.  Colorado's No Fault Act and the *Clark* Case

**A.      Colorado's Automobile Insurance Statutory Scheme**

In 1973 Colorado enacted the Colorado Auto Accident Reparations Act ("CAARA" or the "No Fault Act").  *See State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1225 (10th Cir. 2008).  It was repealed effective July 1, 2003.  *See* Colo. Rev. Stat. § 10-4-726 (2003). The No Fault Act required all Colorado automobile insurance companies to include minimum PIP benefits in all insurance policies.  *See* Colo. Rev. Stat. § 10-4-706 (2003).  These PIP benefits were payable to four classes of people: (1) the named insured; (2) household relatives of the named insured; (3) passengers of the vehicle; and (4) pedestrians injured by the covered vehicle.  *See* Colo. Rev. Stat. § 10-4-707 (2003).  The No Fault Act further required insurance companies to offer all policyholders the option to choose enhanced or increased PIP benefits. *See* Colo. Rev. Stat. § 10-4-710 (2003).  This distinction was significant because while basic PIP benefits include time and dollar cut-offs, enhanced PIP benefits do not.  *See Clark v. State Farm Mut. Auto. Ins. Co.* ("*Clark I* "), 319 F.3d 1234, 1238 (10th Cir. 2003) (noting that enhanced "PIP benefits do not place time or dollar limitations on medical expense claims and offer the possibility of greater wage loss reimbursements").  Initially, many insurance companies

---

a *de novo* determination of those portions of the recommendation to which timely and specific objection is made.  *See U.S. v.  One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  When no party files objections to a magistrate judge's recommendation, the court has discretion to apply whichever standard of review it deems appropriate.  *See Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

interpreted the statute as only requiring an offer of enhanced PIP benefits for certain classes of people covered by the policy, *i.e.*, not for pedestrians.  However, in *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 553–54 (Colo. Ct. App. 1998), the Colorado Court of Appeals determined that the No Fault Act required an insurance company to offer enhanced PIP benefits for all classes of covered individuals, including pedestrians.  It also determined that the proper remedy for failure to offer enhanced PIP benefits for pedestrians was reformation of the contract to include the upper limit of coverage for pedestrians.

State Farm was one of the insurers that did not offer or pay enhanced PIP benefits to pedestrians, regardless of the level of coverage purchased by the policyholder (a practice known as the "Pedestrian Limitation").  However, after the *Brennan* decision was final, State Farm amended all of its policies in November 1998 to delete the limitation on pedestrian coverage. *Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F.Supp.2d 1252, 1257 (D. Colo. 2003) ("*Clark II*"); *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1075 (10th Cir. 2007) ("In November 1998, State Farm eliminated the Pedestrian Limitation via Endorsement 6850AJ.").

**B.    The *Clark* Class Action**

In August 2000, Ricky Clark filed a putative class action against State Farm in Colorado state court, which was thereafter removed to this Court and litigated before Judge Lewis T. Babcock.  Clark, like Ms. Folks, was a pedestrian who was struck and injured by a vehicle insured by State Farm.  Clark asserted claims individually and on behalf of those similarly situated, alleging that State Farm had routinely failed to offer or pay enhanced PIP benefits as required by the No Fault Act's § 710 and by *Brennan*.  *See Clark I*, 319 F.3d at 1237.  In *Clark I*, the Tenth Circuit determined that *Brennan* applied retroactively and that Clark was entitled to

reformation of the applicable policy.  *Id*. at 1242.

On remand, the Court addressed Clark's claim of reformation, holding a three-day evidentiary hearing regarding the effective date of reformation of the Clark policy.  *Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F.Supp.2d 1252, 1270 (D. Colo. 2003).  On appeal, the Tenth Circuit affirmed the district court's decision to (1) award Clark PIP benefits at the level of the extended pedestrian coverage which State Farm should have offered to its insured; (2) cap the PIP benefits at $200,000; (3) use the date of the district court's order as the effective date of the reformation of Clark's policy; and (4) limit reformation of the policy to provide extended PIP benefits only to pedestrians.  *Clark v. State Farm Mut. Auto. Ins. Co*. ("*Clark III*"), 433 F.3d 703, 705 (10th Cir. 2005).

Judge Babcock addressed the class issues after the remand of *Clark III*.  Clark was directed to narrow the definition of the class to include only pedestrians injured by vehicles insured by State Farm; the definition of the class to be certified was as follows:

> All pedestrians who received No-Fault benefits under a Colorado State Farm automobile insurance policy where the governing policy documents at the time of the accident were issued prior to January 1, 1999.  Excluded from the Class are all State Farm executives, their legal counsel, and immediate family members, the Court and its staff, and all employees of proposed Class Counsel.

*Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478 (D.Colo. Sep 18, 2007) ("*Clark IV*"). Clark's motion for class certification was denied on several alternative grounds, including an inadequate showing of numerosity and failure to satisfy the requirements of Fed. R. Civ. P. 23(b)(2) and/or (b)(3).  *Id.* at 483, 485-489.  In addition, because Clark's individual claims had been resolved by State Farm's voluntary payment of the full amount he sought, his claims were moot and he was not a typical nor adequate class representative.  *Id.* at 490.  The Tenth Circuit

affirmed the denial of the motion for class certification solely on the basis of mootness and declined to address the alternative grounds. *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134 (10th Cir. 2009) ("*Clark V*").

## IV.  Background of Ms. Folks' Claim and this Litigation

The history of Ms. Folks' claim and the procedural background of this case are relatively straightforward.  Ms. Folks was injured on April 4, 1998 when she, as a pedestrian, was struck by a vehicle driven by a State Farm insured.  The driver's policy was issued prior to *Brennan* and did not contain enhanced PIP benefits for pedestrians.  It has been determined that Ms. Folks' claim accrued on April 16, 1998.

This action was commenced on January 9, 2004 when Kim Nguyen filed a complaint against State Farm in Colorado state court alleging claims for breach of insurance contract and bad faith.  The case was thereafter removed to this Court.  In May 2004, Ms. Nguyen was permitted to file an amended complaint; in the amended complaint, Ms. Folks was added as a Plaintiff and class action claims were asserted for declaratory relief/reformation, breach of contract/failure to pay PIP benefits, violation of the No Fault Act, statutory willful and wanton breach of contract, and breach of the duty of good faith and fair dealing.  The Plaintiffs sought declaratory relief, statutory damages, damages equal to the enhanced PIP benefits the Plaintiffs and class members would have received under compliant policies, exemplary damages, interest and attorney's fees.

State Farm moved for summary judgment contending that the claims of both Plaintiffs were time-barred, as they had been filed well after the applicable three-year statute of limitation had expired.  The motion was granted.  However, as to Ms. Folks, the Tenth Circuit reversed.

*Folks v. State Farm Mut. Ins. Co.*, 299 Fed.Appx. 748 (10th Cir. 2008).  It did so based on the decision in *Boellstorff*, discussed *infra,* which applied the doctrine of class action tolling where an individual member of a putative class pursues an independent claim before the district court has decided the class certification issue but after the non-tolled statute of limitation had run.  In both *Folks* and *Boellstorff*, the Tenth Circuit determined that the plaintiff was a member of the putative class on whose behalf relief was sought in *Clark*.  Because the statute of limitation for Ms. Folks, like the plaintiff in *Boellstorff,* was tolled by the pendency of *Clark* and she filed her lawsuit before class certification was denied in *Clark*, her claims were timely.

After her case was remanded, Ms. Folks filed a motion for class certification (**#144**) on June 17, 2009.  However, the Court noted that after the defined class was appropriately limited, Ms. Folks' claims were essentially identical to those in *Clark*; at the time, the denial of class certification in *Clark IV* was on appeal.  The Court noted that if the denial of class certification was upheld, it would most likely be determinative as to Ms. Folks' motion.  However, if the decision in *Clark IV* were reversed and a class certified, then Ms. Folks would be a member of the *Clark* class and there would be little reason for this case to proceed.

The *Clark V* decision, however, did not result in either of these situations.  Rather, *Clark IV* was affirmed solely on a ground not present in this case – the fact that the putative class representative's claims were mooted by State Farm's payment.  Therefore, there is no binding determination as to the Fed. R. Civ. P. 23 factors applicable to this case and, to the Court's knowledge, no other pending class action for Ms. Folks to join, although the decision in *Clark IV* is helpful as guidance in analyzing the issues.

Approximately a year after the Tenth Circuit rendered its final decision in *Clark V*, Ms.

Folks again moved for class certification. In the renewed Motion, Ms. Folks seeks to certify a class defined as:

> All pedestrian insureds who received No-Fault benefits under a Colorado State Farm automobile insurance policy where the governing policy documents at the time of the accident were issued prior to January 1, 1999, and whose claims accrued on or after August 1, 1997. Excluded from the Class are all State Farm executives, their legal counsel, and their immediate family members, the Court and its staff, and all employees of proposed Class Counsel.

Again, this description is essentially identical as the class defined in *Clark IV*, for which class certification was denied.

State Farm opposes the motion, arguing that although Ms. Folks' individual claims were tolled during the pendency of *Clark*, claims of other class members were not. Therefore, because her class claims were untimely when first asserted in 2004 and class certification was denied in *Clark*, she cannot now rely on class action tolling to attempt to recertify a previously rejected class. The Recommendation agrees with this reasoning and therefore recommends denial of the Motion for Class Certification on the grounds that the class claims are time-barred. The merits of the Rule 23 issues were not addressed.

To resolve the statute of limitation question, the doctrine of class action tolling must be examined.

## V. Analysis - Class Action Tolling

### A.  Class Action Tolling -Applicable Law

The class action tolling doctrine was originally announced by the United States Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *American Pipe* and its progeny established that individual parties are entitled to intervene in an action after the denial of class certification even though the statute of limitation had expired as to those parties.

414 U.S. at 552-53.  The reason for this is that the members of a putative class are treated as if they were parties to the action and therefore the commencement of the original class suit tolls the running of the statute of limitation for all members until after the denial of the class certification motion or until the individuals "chose not to continue" as class members.  *Id*. at 551, 553.  The principle was stated again in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983): "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  *Id*. at 353-54.  Significantly, for the purposes of this case, the Supreme Court broadly emphasized that "once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied."  *Id*.

These cases all established that a putative class member could intervene or file an individual action *after* the denial of class certification.  In *Boellstorff*, the Tenth Circuit addressed a circumstance not previously considered in this circuit – the ability of a putative class member to file a separate individual action, otherwise untimely, during the pendency of the class action but *before* the trial court denies class certification or the plaintiff opts not to continue as a member of the class.  540 F.3d at 1230.  The Tenth Circuit concluded that Colorado state courts would give effect to the Supreme Court's broad language regarding tolling while a class action, such as *Clark*, "remained in limbo."  *Id*. at 1232.  In making this determination, the Tenth Circuit noted that the class action mechanism's inherent representative means that "each putative class member 'has effectively been a party to an action' against the defendant 'since a class action covering him was filed.'"  *Id*.

As applied to Ms. Folks, and as the Tenth Circuit previously determined, this means that

Ms. Folks' amended complaint filed in 2004 was timely because *Clark* had tolled the applicable statute of limitation since 2000. It must noted, however, that the Tenth Circuit decision in *Folks* did not specifically distinguish claims that Ms. Folks asserted solely on her own behalf and claims of others that she asserted in a representative capacity. Rather, in applying *Boellstorff* it generally discussed Ms. Folks' "individual" claims. Thus, the Tenth Circuit has not expressly addressed the precise question presented here - whether the class action tolling doctrine tolls the applicable statute of limitation for putative class members when class certification of the same class in an earlier case has been denied.

Outside the Tenth Circuit, a line of cases has limited the tolling doctrine of *American Pipe* in somewhat similar circumstances. *See, e.g., Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987). These cases address the situation where a motion for class certification is denied in one case and, thereafter, disappointed members of the class attempt to file a successive class action lawsuit asserting the same claims on behalf of the class for which certification was denied. As noted in *Korwek* and the cases cited therein, the tolling principles of *American Pipe* do not go so far as to permit putative class members to "piggyback one class action onto another and thus toll the statute of limitations indefinitely." 827 F.2d at 878 (citation omitted). Therefore, *Korwek* held that such tolling "was not intended to be applied to suspend the running of statutes of limitations for class action suits filed after a definitive determination of class certification." *Id.* at 879; *see also Reed v. State Farm Mutual Automobile Ins. Co.*, 2008 WL 2475130 at *2 (D. Colo. June 17, 2008), rev'd on other grounds, 324 Fed. Appx. 717 (2009); *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380, 386 (3d Cir. 2002); *Basch v. The Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994); *Andrews*

*v. Orr*, 851 F.2d 146, 149 (6th Cir. 1988); *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (1987).[3]

## B.     Application

The Court makes two initial observations. First, the arguments  present a question as to

the outer limits of the class tolling doctrine that apparently has not been addressed before.

Second, the Recommendation and arguments resolve the question of whether class could be

certified under Rule 23 by focusing on whether such a class would have claims that could be

pursued, assuming that the express requirements of Rule 23 would otherwise be satisfied.

Pertinent to the first observation is the distinction between the facts of *Korwek* and its

progeny and those presented here.  The *Korwek* line of cases addressed the rights of putative

class members those who sought to bring a second class action after class certification on the

same claims in another case had been denied. Thus, in those cases, the second action was

initiated after denial of class certification, and there appeared to be a putative class that desired

to proceed in a second action.

Neither of those characteristics are present here.  Ms. Folks was a putative member of the

*Clark* class, but she filed this action before class certification was denied in *Clark.*  In addition,

although she pled both individual and class based claims in this action, only she appears to assert

that any other member of the putative class in *Clark* wishes to proceed as part of a class in this

action.  The assertion of her claims was timely, but it is only she, rather than other putative

members of class asserted in *Clark*, who contend that a class of Plaintiffs still exists.

Pertinent to the second observation is the agreement of the parties that Ms. Folks'

---

[3]One exception to this general approach has been contemplated, specifically when class certification is denied for reasons not going to the appropriateness of the class mechanism for the substantive claims, such as the adequacy of the class representative.  *See McKowan Lowe*, 295 F.3d at 387-88, and cases cited therein.

individual claims can proceed because they were timely asserted while the class action toll was

in effect.  The focus on whether the claims of members of a putative class in this case are time

barred is one way to think about whether members of a putative class in this case hold similarly

situated claims, but it does not address the other requirement for class certification.

Therefore, before addressing the novel legal issue presented, and in doing so, either

expand or circumscribe the tolling doctrine, the Court finds the sounder course is to first

determine whether a class otherwise could be certified under Rule 23 in this action.

## VI.  Analysis - Merits of Motion for Class Certification

### A.      Requirements of Fed. R. Civ. P. 23

A party seek to pursue claims in a representative capacity must satisfy the requirements

of Fed. R. Civ. P. 23.  The first set of requirements are those set forth in Rule 23(a), which

mandates that a putative class representative show that (1) the class is so numerous that joinder

of all members is impracticable; (2) there are questions of law or fact common to the class; (3)

the claims or defenses of the representative parties are typical of the claims or defenses of the

class; and (4) the representative parties will fairly and adequately protect the interests of the

class.  "A party seeking class certification must show 'under a strict burden of proof' that all four

requirements are clearly met." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

"Whether a case should be allowed to proceed as a class action involves intensely practical

considerations, most of which are purely factual or fact-intensive.  Each case must be decided on

its own facts, on the basis of 'practicalities and prudential considerations.'" *Monreal v. Potter*,

367 F.3d 1224, 1238 (10th Cir. 2004) (citation omitted).

If Rule 23(a) is satisfied, a party must then show that the case qualifies as one of three

types of class actions under Rule 23(b):

> (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Ms. Folks seeks to certify the class under Rule 23(b)(2), Rule 23(b)(3), or a hybrid of the two.

**B.      Application**

Because the decision on class certification in *Clark IV* was affirmed without consideration of factors applicable here, *Clark IV* is not dispositive on this issue.  However, since *Clark IV* examines the identical factual background, legal issues, and class definition, the Court references the findings and conclusions in *Clark IV* to the extent they assist in the analysis here.

**1.      Requirements of Rule 23(a)**

**(a)      Numerosity**

In order to establish numerosity, "[t]he burden is upon plaintiffs seeking to represent a class to establish that the class is so numerous as to make joinder impracticable." *Peterson v. Okla. City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976). This determination is not subject to any "set formula" but rather is a "a fact-specific inquiry." *Trevizo*, 455 F.3d at 1162.

The only evidence as to the number of class members comes from State Farm. After the decision in *Clark III*, State Farm commenced a program of voluntary payment to those individuals it could identify as possibly being owed enhanced PIP benefits as pedestrians injured by a State Farm insured. It searched its own files to find individuals matching the following criteria[4]:

---

[4]The explanation for the criteria is provided in State Farm's Response to the Motion for Class Certification and accompanying affidavits.:

> Criterion (1) was used in order to ensure that the PIP claimants identified suffered an injury causally related to State Farm's inclusion of the Pedestrian Limitation. If a pedestrian could also be classified as one of the other classes of insureds to whom PIP benefits are payable, the Pedestrian Limitation would not have affected the PIP benefits paid to them. See Exh. 8 at 2, ¶ 5. Criterion (2) was used in order to eliminate those pedestrians whose claims are barred either because of the statute of limitations or because the policy under which they received benefits already had been amended to eliminate the Pedestrian Limitation at the time of their accident. See Exh. 8 at 2-3, ¶ 6. Criteria (3) and (4) were necessary in order to ensure that the pedestrians that State Farm contacted had a possibility of having incurred unreimbursed damages. In other words, if the pedestrians had not either received some wage loss payment (which is calculated differently under the P1 [basic PIP] and P4 [enhanced PIP] level of benefits) or exhausted the medical or rehabilitation benefits available to them,then there were no additional PIP benefits to which they might be entitled. See Exh. 8 at 3, ¶¶ 7-8. Finally, criterion (5) was used pursuant to Judge Babcock's ruling in *Clark II*, and the Tenth Circuit's affirmance of that ruling in *Clark III*, that the $200,000 aggregate limit would apply to all pedestrians who might be entitled to policy reformation. See Exh. 8 at 3-4, ¶ 9.

(1) were injured as pedestrians, but could not also be classified as a named insured, spouse, or any relative; and

(2) had a date of loss between August 1, 1997 and December 31, 1998; and

(3) received any wage loss payment; or

(4) received medical or rehabilitation benefits equal to, or in excess of, $50,000; but

(5) who had not received aggregate PIP benefits of $200,000.

This data was provided to the plaintiff in *Clark* and relied upon in the decision in *Clark IV*. It was also provided to Ms. Folks during discovery in this case. *Clark IV* generally approved these limitations[5] and this Court concurs that these criteria accurately reflect the pool of persons entitled to obtain relief under Ms. Folks' class definition.

Applying these criteria, State Farm identified 115 persons who could be eligible for additional PIP benefits. State Farm thereafter made efforts to contact those individuals and ultimately readjusted the claims of 65 of these potential claimants, essentially giving them all the relief to which they would be entitled if their contracts were reformed as a result of relief granted in this case.[6] Therefore, State Farm contends there are only approximately 50 individuals in the

---

Resp., **#174**, at 28.

[5]In determining the outer limits of the eligible class members due to statute of limitations concerns as to when a potential class member's claim accrued, the Court in *Clark IV* determined that "any pedestrian who received a final lost-wages payment on or after August 24, 1997" may be considered a member of the putative class. 245 F.R.D. at 482. Although State Farm's analysis limited claimants to those who had a date of loss between August 1, 1997, which could be somewhat underinclusive, the *Clark* court deemed this discrepancy immaterial. *Id.* at 483.

[6]As noted, State Farm presented this same evidence in *Clark IV,* and, finding that only 50 or so claimants might be affected by a decision in that case, Judge Babcock determined that the number of potential class members was not so numerous as to make joinder impracticable. 245 F.R.D. at 483.

potential class.

Ms. Folks disputes State Farm's calculation of the number of potential class members, arguing instead that there are 718 pedestrians who could be in the class.[7]  This is based on application of only the first two of State Farm's criteria.  State Farm thereafter reduced the list to 115 by reviewing the files of the initial 718 persons identified and eliminating any persons who, for a variety of reasons, would not receive expanded PIP benefits regardless of whether the applicable insurance policy was reformed.  Ms. Folks presents no evidence to dispute State Farm's determination in this regard.  Although such persons technically still fit in Ms. Folks' class definition, in the absence of evidence showing that they would be entitled to payment of additional benefits, it is not clear that they would be able to show a cognizable injury.  Moreover, there is no reason to believe they would have any interest in participating in the case.

Ms. Folks also disputes that the 65 persons (of the 115) who have received some kind of payment from State Farm should be excluded from consideration in determining numerosity, primarily based on her contention that these individuals did not receive a reformed policy or "true notice of their actual rights" and speculates that State Farm perhaps did not properly calculate their benefits.  However, as noted by State Farm, reformation is only a legal tool by which the claimants could assert a right to additional benefits.  If the claimants have already received those benefits, it is unlikely they have colorable claims or any interest in joining the case.  *See Clark IV*, 245 F.R.D. at 483 (citing *Reed v. Bowen*, 849 F.2d 1307, 1310 n. 3 (10th Cir. 1988) (numerosity

---

[7]Ms. Folks appears to contend there could be more pedestrians than this because the January 1, 1999 amendment was not applicable to all policies until the policies were renewed, which occurred on a rolling basis.  Mot. For Class Cert., #**169**, at 4.  Ms. Folks cites no evidence in support of this contention and there is nothing on the record here to indicate that a pedestrian covered by a policy in effect after January 1, 1999 would not have received the benefit of the amendment.

problem presented where of 122 potential class members, there was no evidence that "potential class members failed to resolve their problem administratively, or that any threatened or actual injury has persisted or occurred, or that there is in fact any commonality or absence of conflict within the class, or that any individual desired to bring a claim against the [defendant].").

Given this background, Ms. Folks offers little more than speculation to show that more than approximately 50 persons would potentially join and obtain relief by way of this lawsuit. Applying discretion and considering the practicalities and prudential considerations, including the difficulties attendant with litigating claims now over twelve years old and the availability of State Farm's voluntary payment program, the Court concludes that Ms. Folks has not carried her burden to show that the number of potential plaintiffs is so high as to make joinder impracticable.

### (b)  Commonality

The second requirement of Rule 23(a) is to show that there are questions of law or fact common to the class. While there may be some individualized determinations with respect to the relief to be granted (discussed further below), as to substantive liability the parties do not genuinely dispute that the questions of law and fact are common to the class. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) ("Factual differences between class members' claims do not defeat certification where common questions of law exist). The applicable law at the time required enhanced PIP benefits to be offered to pedestrians and the policies at issue did not offer those benefits. Whether each class member is entitled to reformation and damages will be determined by application of the same law, albeit to different facts. These matters are common to all members of the class and so this element is satisfied.

### (c)  Typicality of Representative

The next element Ms. Folks must establish is that her individual claims are typical of the claims of the class members she seeks to represent. *Rector v. City and County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003) ("A prerequisite for certification is that the class representatives be a part of the class and possess the same interest and suffer the same injury as class members."). Again, while there may be individualized disparities with respect to remedies, Ms. Folks has shown that she is part of the class and suffered the type of injury common to the class. Therefore, this element is satisfied.

### (d)      Adequacy of Representative

Finally, the Court must be satisfied that the class representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This is determined by examining two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, (10th Cir. 2002). There is no apparent conflict of interest with other class members. Moreover, while there was some delay between the final decision in *Clark V* and the filing of the renewed Motion for Class Certification, in general it appears that Ms. Folks has carried her burden in this regard. Ms. Folks has litigated her case through summary judgment and appeal and sought class certification upon remand. Therefore, she has shown that she would be an adequate representative.

To summarize, while some questions remain as to whether the class is sufficiently numerous to satisfy Rule 23(a), the other elements have been shown. The Court next turns to the requirements of Rule 23(b).

### 2.      Requirements of Rule 23(b)

As noted above, Ms. Folks must demonstrate that the case amounts to a class action certifiable under either Rule 23(b)(2) (which applies when injunctive relief will provide common relief to the class) or Rule 23(b)(3) (which applies when questions of law and fact predominate over issues affecting any individual member and a class action is superior to other methods of adjudicating the controversy), or as a hybrid of the two. Specifically, Ms. Folks requests that the case be certified as a Rule 23(b)(2) case for the purposes of the declaratory relief regarding the reformation of the underlying policies and a Rule 23(b)(3) class for the purposes of damages arising from the reformation.

### (a) Rule 23(b)(2)

Class certification is appropriate under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." However, where the claims asserted "do not lend themselves to the formulation of appropriate class-wide injunctive or declaratory relief" and where it is clear that the primary relief sought is monetary damages, it is within a district court's discretion to deny certification on this basis. *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). The Tenth Circuit has set forth an extensive explanation regarding when a class may be certified under Rule 23(b)(2):

> First, plaintiffs must demonstrate defendants' actions or inactions are "based on grounds generally applicable to all class members." Second, plaintiffs must also establish the injunctive relief they have requested is "appropriate for the class as a whole." Together these requirements demand "cohesiveness among class members with respect to their injuries...."
>
> This cohesiveness, in turn, has two elements. First, plaintiffs must illustrate the class is "sufficiently cohesive that any classwide injunctive relief" satisfies Rule 65(d)'s requirement that every

> injunction "'state its terms specifically; and describe in reasonable
> detail ... the act or acts restrained or required.'" (quoting
> Fed.R.Civ.P. 65(d)). Second, cohesiveness also requires that class
> members' injuries are "sufficiently similar" that they can be
> remedied in a single injunction without differentiating between
> class members.  Rule 23(b)(2)'s bottom line, therefore, demands at
> the class certification stage plaintiffs describe in reasonably
> particular detail the injunctive relief they seek "such that the district
> court can at least 'conceive of an injunction that would satisfy [Rule
> 65(d)'s] requirements,' as well as the requirements of Rule
> 23(b)(2)."

*Stricklin*, 594 F.3d at 1999-2000 (citations omitted).

Applying this test here, it is apparent that Ms. Folks could establish the first element (that State Farm's actions or inactions are "based on grounds generally applicable to all class members") because the same wrong is alleged – failure to include enhanced PIP benefits for pedestrians in the applicable policy.  However, the second element (establishing that the injunctive relief they have requested is "appropriate for the class as a whole") is another matter.

While it is a simple thing to "declare," as Ms. Folks urges, that State Farm's policy is unlawful and all class members are entitled to "reformation" of the insurance contracts, as a practical matter this is a separate individualized determination for each member.  Indeed, in the Amended Complaint, the Plaintiffs seek a declaration of "the rights, liabilities, and obligations of the parties herein under the contracts of insurance issued by State Farm and award any monetary relief shown to be appropriate."  Amended Complaint (**#17**).  The rights, liabilities, and obligations of State Farm and of each class member will depend on what each policy provides and whether and how it should be reformed.  This requires individualized analysis.  *See Clark I*, 319 F.3d at 1243 ("This court holds that, pursuant to *Brennan*, the effective date of reformation is an equitable decision to be determined by the trial court based on the particular circumstances of each case.").

In its remand instruction in *Clark I*, the Tenth Circuit instructed the district court, in the exercise of its equitable power, to consider factors such as "(1) the degree to which reformation from a particular effective date would upset past practices on which the parties may have relied and whether State Farm anticipated the rule in *Brennan*; (2) how reformation from a particular effective date would further or retard the purpose of the rule in *Brennan*; and (3) the degree of injustice or hardship reformation from a particular effective date would cause the parties." *Id.*, 319 F.3d at 1243. Judge Babcock understood this to be required as to each class member. *Clark IV*, 245 F.R.D. at 488 ("Under the mandate of *Clark I*, I could make no less searching an analysis for each putative plaintiff here."). While the findings and conclusions from *Clark II* may carry over to this case to streamline some of the inquiry, it is not at all clear that they would apply to all class members.[8] Factors such as whether the subject policy was issued before or after *Brennan* might play a role, as would any reliance by the class member on past practices and hardships resulting to the parties from a given effective date.

No simple relief would flow from a declaration regarding reformation such that the class members' injuries would be "remedied in a single injunction without differentiating between class members." Therefore, the Court concludes that this case is not appropriate for Rule 23(b)(2) certification.

**(b)    Rule 23(b)(3)**

Class certification under Rule 23(b)(3) is appropriate where questions of law or fact common to class members predominate over any questions affecting only individual members

---

[8]Ms. Folks proposes to simplify this by having all issues relating to reformation be heard in a single hearing, apparently on the assumption that a single reformation date could be established as to some or all of the potential claimants. She has not made any showing, however, that this is feasible or that reformation dates applicable to broad numbers of the potential class members could be determined.

and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### (i)       Predominance

Although there are common questions of law and fact, they all concern the substantive liability of State Farm for its deficient policies during the relevant time period.  The law and facts as to liability have been exhaustively litigated in *Clark* and other cases.  Moreover, at this point, State Farm has essentially conceded liability by implementing its voluntary payment program. Therefore, as a practical matter, these common questions of law and fact would consume very little litigation time and indeed might even be stipulated.

On the other hand, what remains to be litigated is the relief that each class member is entitled to receive.  As noted above, individualized determinations of the effective date of reformation will be required as to each class member.  In addition, although the basic damages issue in this case is not complex, individualized determinations may nonetheless be needed.  As noted by Judge Babcock in *Clark IV*, once liability is determined, the presumptive amount of damages can be mechanically calculated using a formula that subtracts that amount of benefits paid from the amount due under a full extended PIP benefits plan. 245 F.R.D. at 488. However, State Farm would nonetheless be entitled to challenge whether the medical expenses or wage loss benefits claimed by the class member were in fact incurred as a result of the accident at issue and whether such costs were reasonable.  Again, such challenges would be unique to each individual class member.

Based on the above, it appears that individualized determinations regarding entitlement to relief and damages owed would predominate over any common questions of law and/or fact.

### (ii)      Superiority

Finally, to certify the class under Fed. R. Civ. P. 23(b)(3), the Court must find that a class action is a superior method of fairly adjudicating the issues here. Given the apparent myriad of individual issues to be determined even if this case were certified as a class action and the relatively small number of potential class participants, the Court concludes that a class action is not superior to individual litigation. The Court discerns no advantage in implementing the heavy mechanism of a class action as compared to having potential plaintiffs join this action or initiating, if not barred by the statute of limitation, their own lawsuits.

Based on the above analysis, this case should not be certified as a class action under either Rule 23(b)(2) or Rule 23(b)(3), even if the proceedings are divided into a "reformation" stage and a "damages" stage as proposed by Ms. Folks.

**IT IS THEREFORE ORDERED** that

(1)     The Court declines to adopt the Recommendation of United States Magistrate Judge (**#180**). Upon *de novo* review, Plaintiff Roberta Folks's Motion for Class Certification (**#169**) is **DENIED**.

(2)     The parties shall contact the Court's Chambers within 10 days of the issuance of this order to set the matter for a Final Pretrial Conference.

Dated this 29th day of March, 2012

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge